**UNITED STATES of America, Appellee,**

v.

**Garnet Dwight EVERROAD, Appellant.**

No. 82–1114.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 11, 1983.

Decided April 6, 1983.

Nile Stanton, Indianapolis, Ind., Ronald L. Hack, St. Louis, Mo., for appellant.

Ronald M. Kayser, Asst. U.S. Atty., Des Moines, Iowa, for appellee; Richard C. Turner, U.S. Atty., Des Moines, Iowa, on brief.

Before HEANEY, ROSS and GIBSON, Circuit Judges.

HEANEY, Circuit Judge.

Defendant Garnet Dwight Everroad appeals from his convictions in a jury trial for possessing cocaine with the intent to distribute it, and for conspiring to distribute cocaine and marijuana. Because we find that the law enforcement officials involved here lacked probable cause to arrest Everroad, we reverse his convictions.

## I.

## PROCEDURAL BACKGROUND

In the early afternoon of August 17, 1981, Garnet Everroad was arrested in Marshalltown, Iowa, and subsequently charged as a codefendant in a multiple count indictment filed in the United States District Court for the Southern District of Iowa. Count I charged that Everroad, along with Bob Bragg and Gary LaMasters, conspired to distribute marijuana and cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), and 846. Count III charged Everroad with possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).

Everroad pled not guilty, and subsequently filed a motion to suppress, contending that agents of the United States Drug Enforcement Agency (DEA) and the Iowa Division of Criminal Investigation (DCI) unconstitutionally subjected him to a warrantless arrest, search and seizure. After a hearing, the district court [1] denied Everroad's motion, and permitted the government to introduce several items seized after Everroad's arrest.

After a three day trial in November, 1981, the jury found Everroad guilty on both counts. The district court sentenced Everroad to eight years imprisonment, with a special parole term of three years.

## II.

## FACTS

On August 6, 1981, during an investigation by the DCI and DEA, DCI Agent Ken Carter, acting undercover, purchased approximately one ounce of cocaine from Gary LaMasters in Liscomb, Iowa. The following week, Agent Carter telephoned LaMasters to discuss another purchase of drugs, but spoke instead with Bob Bragg, who agreed to sell Carter ten pounds of marijuana for $3,750 and a quarter-pound of cocaine for $9,000. Bragg and Carter agreed to meet to consummate the transaction at a Sambo's Restaurant in Marshalltown, Iowa at 1:00 p.m. on August 17.

On the morning of August 17, the DEA and DCI placed under surveillance the residence of Ron Wenthe, who was believed to be an associate of LaMasters and Bragg. The agents observed a blue Datsun 280–Z parked at Wenthe's residence. Shortly after the Datsun was driven away, Agent Carter called Bragg to confirm their meeting that afternoon.

At approximately 12:35 p.m. on August 17, DCI Agent Wilbur observed Bragg and a passenger, later identified as Everroad, driving a silver Toronado through the Sambo's parking lot in Marshalltown. Bragg and Everroad then drove to the Regency Motel in Marshalltown. Everroad went briefly into the motel, and when he returned, he and Bragg parked the Toronado next to a blue Datsun 280–Z. Bragg and Everroad both went back into the motel for approximately fifteen minutes. They then returned to their cars, where they had a brief conversation. Bragg left in the Toronado, and Everroad went back into the motel.

Shortly thereafter, at about 1:00 p.m., Bragg met Agent Carter at the Sambo's Restaurant. Bragg informed Carter that he would have to pay first for the ten pounds of marijuana, and that within one-half hour after this transaction was completed, the cocaine would be delivered. Bragg and Carter left the restaurant and drove to a gravel road approximately two miles south of the Regency Motel. When

[1]. The Honorable Harold Vietor, United States District Judge for the Southern District of Iowa.

Bragg removed several pounds of marijuana from the trunk, Agent Carter arrested him. No cocaine was found on Bragg's person or in his automobile.

After Bragg's arrest, several other agents moved to apprehend Everroad at the Regency Motel. The agents learned from the motel clerk that the blue Datsun belonged to a man named Everroad, who had checked into the motel that morning. The agents persuaded the motel clerk to make a hoax call to Everroad, informing him that his car had been involved in an accident and requesting him to come to the lobby. When Everroad stepped out of his room, the agents—without a warrant—arrested him at gunpoint.

The agents immediately searched Everroad's room and discovered a few marijuana cigarettes on the air conditioner and a suitcase, which they later opened pursuant to a search warrant.[2] The agents also gathered the remainder of Everroad's personal property.[3] They then turned in Everroad's room key and informed the motel staff that he likely would not be returning. Outside the motel, the agents, in Everroad's presence, searched his automobile and found a triple-beam balance scale.

That evening, law enforcement officials returned twice to the Regency Motel to search Everroad's room, after obtaining the consent of the person to whom the staff had re-rented the room. Neither search was made pursuant to a search warrant. On the second search, at approximately 8:15 p.m., the agents discovered a shaving kit after removing the desk from its pedestal. Inside the kit, they found three jars of cocaine. Expert fingerprint examiners later discovered Everroad's latent fingerprint on a plastic bag inside the shaving kit.

The evidence produced by the various searches conducted by the agents constituted the bulk of the government's evidence against Everroad. This evidence would not have been admitted if the court below had granted the defendant's suppression motion.

## III.

## DISCUSSION

On appeal, Everroad contends that the evidence seized from him should have been suppressed because the agents lacked probable cause to arrest him without a warrant.

■ The existence of exigent circumstances—such as the possibility that a suspect may flee or destroy evidence—may permit law enforcement officials to make a warrantless arrest. *E.g., United States v. Eddy,* 660 F.2d 381, 384–385 (8th Cir.1981). Such a warrantless arrest, however, must be supported by probable cause that the suspect had committed or was committing a crime. *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

■ In denying the defendant's motion to suppress evidence, the court below found that the officers had probable cause to arrest Everroad after they had arrested Bragg. This finding may not be set aside unless it is clearly erroneous. *United States v. McGlynn,* 671 F.2d 1140, 1143 (8th Cir.1982).

The facts outlined above reveal that Everroad was observed on several occasions with persons who were negotiating and executing a drug sale with undercover law enforcement officials. Such circumstances understandably may create a suspicion in an officer's mind, but probable cause requires more than mere suspicion. *United States v. Green,* 670 F.2d 1148, 1149 (D.C. Cir.1981). The existence of probable cause to make a warrantless arrest depends upon

> 'whether at the moment the arrest was made, ... the facts and circumstances within (the arresting officers') knowledge and of which they had reasonably trustworthy information were sufficient to

---

**2.** The agents opened the suitcase the next day after obtaining a search warrant. Inside the suitcase, they found one pound of marijuana. Everroad has not challenged the validity of this search warrant.

**3.** After the agents had gathered all the personal property in sight, they asked Everroad whether they had taken all his property. He responded affirmatively.

warrant a prudent man in believing that the (suspect) had committed or was committing an offense.'

E.g., *United States v. Capers,* 685 F.2d 249, 251 (8th Cir.1982), *quoting Beck v. Ohio, supra,* 379 U.S. at 91, 85 S.Ct. at 225.

The determination of whether probable cause exists must not rest on isolated facts; rather it depends on the cumulative effect of the facts in the totality of circumstances. *United States v. McGlynn, supra,* 671 F.2d at 1143. Of course, "probability, and not a prima facie showing of, criminal activity is the standard of probable cause." *Spinelli v. United States,* 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969). After carefully reviewing the record in this case, we are left with the firm conviction that no prudent person could reasonably believe, based upon all the facts present here, that Everroad had committed or was committing a crime at the time he was arrested. Accordingly, the court below clearly erred in finding that the drug agents had probable cause to arrest him.

The briefs filed by the parties and the record reveal the following facts:

DEA and DCI agents knew that Bragg, the man negotiating the drug sale, was at Wenthe's residence on the morning of August 17, 1981—the day the deal was to be effectuated. The agents saw a blue Datsun parked at Wenthe's home for awhile that morning; but at that time they did not know to whom the car belonged, nor did they see who drove it away. Indeed, at that time the agents did not even know of Everroad's existence.

Later on August 17, the agents observed Everroad, as yet unidentified, driving with Bragg in a silver Toronado through the Sambo's parking lot prior to the scheduled meeting between Bragg and Agent Carter.

Shortly thereafter, Everroad and Bragg were seen at the Regency Motel where they parked the Toronado next to a blue Datsun, briefly entered the motel, and then returned to the automobiles where they had a short conversation.

When Bragg met Agent Carter at the Sambo's Restaurant, Bragg said he would deliver the marijuana first, and after that transaction was successfully completed, he would deliver the cocaine within a half hour. After Bragg handed over the marijuana, Carter arrested him. When the search of Bragg and his Toronado produced no cocaine, the agents assumed that the cocaine was located within a half hour radius because of the delivery terms set by Bragg. The Regency Motel was located less than one-half hour from the road where Bragg was arrested.

After Bragg's arrest, DEA and DCI agents obtained Everroad's name—for the first time—and room number from the motel clerk by asking to whom the blue Datsun was registered.

Reduced to the essentials, this evidence reveals only two basic facts in support of the district court's finding that the agents had probable cause to arrest Everroad. First, the agents observed Everroad accompanying Bragg, whom the agents knew was then involved in a drug transaction, to areas where the deal was being arranged. Second, under Bragg's plan, Agent Carter would receive the cocaine within a half hour after he received the marijuana; and the agents knew that Everroad's motel was located within the one-half hour radius of the place where Bragg delivered the marijuana.

With regard to the first fact, it is settled that mere association with a known or suspected criminal, or mere presence in that person's automobile, does not create probable cause to arrest. *E.g., United States v. Capers, supra,* 685 F.2d at 251; *United States v. Barber,* 557 F.2d 628, 631 (8th Cir.1977). Nor is probable cause established by the presence of a person in a location known to be frequently involved in narcotics sales or other crimes. *See, e.g., United States v. Green, supra,* 670 F.2d at 1152.

The second fact in support of the district court's probable cause finding, the location of Everroad's motel near the scene of Bragg's arrest, is equally unavailing.

Surely such physical proximity to a crime combined simply with a brief association with a suspected criminal—when there is no other unlawful or suspicious conduct by any party involved—cannot support a finding of probable cause. Moreover, it is clear that law enforcement would not have been unduly hampered here if the agents had waited to obtain more facts before seeking to arrest Everroad. *See Beck v. Ohio, supra,* 379 U.S. at 91, 85 S.Ct. at 225.[4]

Therefore, the agents' warrantless arrest of Everroad violated the Fourth and Fourteenth Amendments because it was not supported by probable cause. Moreover, the government concedes that the discovery of the evidence seized from the defendant stemmed directly from his unlawful arrest. Accordingly, the district court erred in permitting that evidence to be introduced at trial. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Everroad's conviction therefore must be reversed.[5]

JOHN R. GIBSON, Circuit Judge, dissenting.

I respectfully dissent. As the majority observes, probable cause is a practical nontechnical concept, *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). It rests on the cumulative effect of the facts, in the totality of the circumstances, confronting a reasonably cautious and prudent police officer. *United States v. McGlynn,* 671 F.2d 1140, 1143 (8th Cir.1982). Here after the earlier purchase of cocaine from LaMasters, Bragg talked to Agent Carter about another purchase of marijuana and cocaine. Surveillance of the residence of Wenthe resulted in observation there of a blue Datsun 280–Z. Carter called Bragg at the Wenthe residence to confirm their meeting shortly after the

Datsun was driven away. Bragg, a little later, was driving his Toronado with a passenger later identified as Everroad. The Toronado was driven to the Regency Motel, and after Everroad went into the motel and returned, it was parked next to Everroad's blue Datsun 280–Z. Both men went into the motel and came back to the cars for further conversations. Bragg then met Carter and told him that the first transaction was to be for the ten pounds of marijuana and about one-half hour later the cocaine would be delivered. Bragg was arrested when he removed the marijuana from the trunk of his car, and no cocaine was found in the car or on his person.

The district court found at that point that probable cause and exigent circumstances existed. Considering the cumulative effect of the facts set forth above in the totality of the circumstances, I cannot find that the district court was clearly erroneous. Accordingly, I would affirm the conviction.

---

**4.** As the Supreme Court has stated:

The rule of probable cause is a practical nontechnical conception affording the best compromise that has been found for accommodating * * * often opposing interests. Requiring more would unduly hamper law enforcement. To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice.

*Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *Brinegar v. United States,* 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949).

**5.** Because of our holding, we need not address the other challenges Everroad has raised to his conviction.