UNITED STATES of America,
Plaintiff-Appellee,

v.

Alejandro LIMA, Defendant-Appellant.

No. 86–2603.

United States Court of Appeals,
Seventh Circuit.

Argued March 3, 1987.

Decided April 27, 1987.

Steven B. Muslin, Steven B. Muslin, Ltd., Chicago, Ill., for defendant-appellant.

Allan N. Grossman, Asst. U.S. Atty., Anton Valukas, U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before WOOD, RIPPLE, and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

Alejandro Lima was convicted in district court of a number of federal offenses involving the possession of cocaine and firearms. In his written plea agreement, Lima reserved the right to appeal on the ground that the district court erroneously denied his pretrial motion to suppress certain evidence because it was the fruit of an unconstitutional arrest. We believe that the district court was correct in its determination that there was probable cause to arrest the defendant. Therefore the motion to suppress was properly denied and the judgment of conviction is affirmed.

I. *Facts*

At approximately 10:35 p.m. on April 28, 1982, Kevin Lane, an undercover agent with the Drug Enforcement Agency (DEA), met with Rudolfo Maceyras at a Chicago restaurant to negotiate a purchase of one pound of cocaine. Other DEA agents were on surveillance outside the restaurant. Inside, Maceyras received a telephone page, made a call, and then told Lane "his guy was on the way over." Shortly thereafter, Barbaro Montalvo joined Maceyras and Lane. Montalvo and Maceyras discussed "going to get the stuff." The three left the restaurant. Maceyras told Lane to follow in his car. Lane followed Maceyras and Montalvo, who were in Montalvo's car, to a park area along Lake Michigan. Very shortly after Montalvo parked there, an Oldsmobile, driven by defendant Lima, pulled up directly behind Montalvo's car. A third smaller car was parked on the

other side of the street. By this time it was approximately 11:00 p.m. There were no other vehicles in the immediate vicinity.

Agent Lane was in radio contact with DEA Special Agent Wayne Kowalski. Lane described the cars to Kowalski, but did not say when they had arrived. Lane observed Maceyras and Montalvo get out of their car. He informed Agent Kowalski that one of them, later identified as Montalvo, went over to the driver's side of Lima's car, and that another man left the smaller car carrying a brown paper bag which he put into a phone booth nearby. Lane informed Kowalski that Maceyras was coming over to his (Lane's) car. There Maceyras told Lane that the cocaine was in the phone booth and that he wanted to see the money. After a brief discussion, Lane got out of his car and gave a prearranged arrest signal to the other DEA agents by opening his trunk.

At that point, several unmarked cars carrying DEA agents in plain clothes moved in to make the arrests. At least some of them were using flashing lights [1] and sirens. One of the agents, Nancy Colletti, shouted, "Police. You're under arrest." Lima, whose vehicle had been parked behind Montalvo's up to this point, drove away in reverse with no lights on. Agent Kowalski in one car, with flashing lights and siren, pursued him. Another agent followed in another car. Lima drove in reverse at speeds of up to 40 to 45 miles per hour for two blocks. At that point, he was blocked by the two DEA agents' cars. Lima's car then went forward and struck one of the agents' vehicles. As Lima left his car, Agent Kowalski saw a handgun on the front seat. Kowalski handcuffed Lima and went into the car to get the gun. There he found, in addition to the handgun, an assault rifle and ammunition.

Lima does not contest any of these facts. He claims, however, that the firearms, as well as certain statements that he made while in custody, should have been sup-

pressed as fruits of an arrest made without probable cause.

## II. *Standard of Review*

■ For purposes of review, this court must rely on the district court's factual findings unless they are clearly erroneous. *United States v. Goudy*, 792 F.2d 664, 668 (7th Cir.1986). Review of the court's determination of probable cause, however, is *de novo*, and is conducted in light of the following standard:

> The police have probable cause to arrest an individual where "the facts and circumstances within their knowledge and of which they [have] reasonable trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); *United States v. Jones*, 696 F.2d 479, 486 (7th Cir.1982), *cert. denied*, [462 U.S. 1106], 103 S.Ct. 2453, 77 L.Ed.2d 1333 (1983). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2335 n. 13, 76 L.Ed.2d 527 (1983). The determination of whether probable cause exists in a given situation involves "the factual, practical considerations of everyday life upon which reasonable, prudent [persons], not legal technicians act." *United States v. Watson*, 587 F.2d 365, 368 (7th Cir.1978), *cert. denied*, *Davis v. United States*, 439 U.S. 1132, 99 S.Ct. 1055, 59 L.Ed.2d 95 (1979).

*Goudy*, 792 F.2d at 668 (quoting *United States v. Covelli*, 738 F.2d 847, 853 (7th Cir.)), *cert. denied*, 469 U.S. 867, 105 S.Ct. 211, 83 L.Ed.2d 141 (1984).

## III. *Probable Cause to Arrest*

### A. *After the Chase*

■ The district court found that Lima was arrested when his car was stopped and he was handcuffed by Agent Kowalski. It held, on the basis of the facts [2] known to

---

1. The unmarked cars used alternating headlights, rather than Mars lights.

2. The district court, ruling orally on the motion to suppress, did not provide a comprehensive statement of the facts. The district judge, how-

Kowalski at that time, that there was probable cause to arrest Lima. We agree.

At the time he handcuffed Lima, Kowalski knew that Lane had arranged the drug sale with Maceyras and Montalvo. He knew that, with no other cars in the immediate vicinity, at 11:00 at night in a park, Lima's car was parked directly behind Montalvo's. Lane had told him that one of the men from Montalvo's car had gone to Lima's car and made contact with him. Following this contact, Kowalski knew that Lima had remained at the scene as the drug transaction continued. Finally, he knew that, when the DEA agents appeared with sirens and lights identifying them as law enforcement officials, Lima fled, at high speed, in reverse. His flight terminated only when he was blocked by the cars of two DEA agents. Indeed, he eventually rammed one of those cars. These facts are more than "sufficient to warrant a prudent [person] in believing that [Lima] had committed or was committing an offense." *Covelli*, 738 F.2d at 853 (quoting *Beck*, 379 U.S. at 91, 85 S.Ct. at 225).

Lima, citing *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), argues, however, that the fact that he "backed" his car away as the agents approached is of little value in the probable cause calculus. In *Wong Sun*, the Court did find little evidentiary value in the defendant's flight, but it noted there that the officers from whom the defendant fled had not clearly identified themselves as police and that he fled only from the front door to the bedroom. *Id.* at 482–84, 83 S.Ct. at 414–15. In other circumstances, the Court has recognized that flight can be strong evidence of guilt. *See, e.g., Sibron v. New York*, 392 U.S. 40, 66–67, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968). Here, the defendant led DEA agents, who were identified as police by sirens and flashing lights, as well as by Agent Colletti's shout of "Police," from the scene of a drug sale, on a high-speed chase in reverse for over two blocks, eventually ramming another

car in his attempt to escape. Even if the mere fact of flight is, as Lima claims, susceptible of an innocent interpretation, it is clear that, when the activity is evaluated in its entirety, *United States v. Herrera*, 757 F.2d 144, 149 (7th Cir.1985), Kowalski had probable cause to arrest Lima after the chase.

**B. *Before the Chase***

■ Lima also argues, however, that the district court erred in considering the fact and circumstances of his flight in determining whether Agent Kowalski had probable cause. He was already arrested, he contends, before he fled, when the DEA agents arrived on the scene with guns drawn. We find it unnecessary to decide whether Lima was arrested at that time. It is clear that, even then, Agent Kowalski had probable cause.

Lima argues to the contrary that, before he fled, all Kowalski knew was that he was present at the scene. Mere proximity to the general area of a crime, or mere association with conspirators, he claims, is not probable cause. In support of this argument, Lima relies most heavily on *United States v. Everroad*, 704 F.2d 403 (8th Cir. 1983), in which the Eighth Circuit stated: "Surely such physical proximity [at a motel two miles from the scene of the drug deal] to a crime combined simply with a brief association with a suspected criminal—*when there is no other unlawful or suspicious conduct by any party involved* —cannot support a finding of probable cause." *Id.* at 407 (emphasis added). His argument ignores the fact that there were other suspicious circumstances here that were not present in *Everroad*. Lima was parked at 11:00 p.m. at the scene of a drug transaction, on a road running through a park, with no one else in the vicinity, directly behind the car of one of the parties known to be involved in the transaction. Moreover, one of those parties, Montalvo, walked over to Lima's car and made con-

ever, explicitly based her finding of probable cause on the "fact that Montalvo went back, made some contact ... with [the] Oldsmobile driver ... the fact that there were no other cars

in the vicinity, that he was parked immediately behind [Montalvo's car], the fact that he took flight, accelerated, and had to be brought to a screeching halt two blocks away."

tact with him while the transaction was taking place. At the hearing on the motion to suppress, counsel suggested that that contact may have been totally innocent, amounting to no more than Montalvo telling a stranger to "get out of there." As the district judge noted, that interpretation is belied by the fact that Lima did not leave. Although enough time had passed for Montalvo to walk away from Lima's car, it was still parked directly behind Montalvo's car when Kowalski arrived on the scene. Any innocent interpretation is further undermined by the fact that neither Maceyras nor Montalvo called off or postponed the delivery of the drugs despite Lima's presence. These facts, known to Kowalski even before Lima fled, were sufficient to establish "'a probability or substantial chance [that Lima was involved in] criminal activity.'" *Covelli,* 738 F.2d at 853 (quoting *Gates,* 466 U.S. at 243 n. 13, 103 S.Ct. at 2335 n. 13).

## IV. *Conclusion*

Regardless of whether Lima's arrest occurred before he fled or after, it was made with probable cause. His motion to suppress was properly denied.

AFFIRMED.