**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Raul SOTO, Defendant–Appellant.**

**No. 89–3321.**

United States Court of Appeals,
Seventh Circuit.

Argued June 20, 1990.

Decided July 26, 1990.

As Amended Aug. 2, 1990.

Patrick J. Foley, Robert S. Rivkin, Barry R. Elden, Asst. U.S. Attys., Chicago, Ill., for plaintiff-appellee.

Steven B. Muslin, Chicago, Ill., for defendant-appellant.

Before FLAUM and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

FLAUM, Circuit Judge.

Raul Soto appeals from the district court's denial of his motion to quash arrest and to suppress evidence obtained incident to his arrest, arguing that police did not have probable cause to arrest him. Soto pleaded guilty to one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 846, and to one count of conspiracy and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). Soto was sentenced to 63 months in prison on each count, to be served concurrently. Soto entered his plea on the condition that he be permitted to appeal the denial of the motion to suppress. We affirm.

## I. FACTS

On June 28, 1988, Manuel Aponte, a special agent with the Federal Bureau of Investigation (FBI), was working undercover under the supervision of the Drug Enforcement Agency (DEA). On that date, Aponte purchased two ounces of cocaine for $1,600 from Martin Soria, Soto's codefendant in the district court. Between June 28 and March 6, 1989, Aponte and Soria conducted negotiations leading to the arrangement of a larger purchase of cocaine—one involving five kilos costing $18,000 each. Aponte and Soria arranged to consummate the deal in the parking lot of a Wendy's restaurant, located on Western Avenue, between 21st Street and 21st Place, in Chicago.

On March 6, Aponte arrived at the Wendy's at around 3:20 p.m., wearing a transmitter. Additionally, seven to ten other undercover DEA agents staked out the area around the Wendy's and monitored Aponte's activities. At 3:30 p.m., Soria arrived in a car, alone. Agent Flores, who was with Aponte, showed Soria that he had the money for the drugs, but Soria responded that his source was elsewhere. Soria proceeded to make a telephone call from a pay phone in the parking lot. After he finished on the phone, Soria told Aponte

that he was going to get the cocaine from his source, who was at 26th Street, five blocks south of Wendy's. Aponte was to meet Soria back at Wendy's an hour later. At this point, Soria left, driving southbound on Western Avenue.

At 5:30 p.m., Aponte returned to Wendy's. Ten minutes later, Aponte saw a red Oldsmobile with a white top arrive from the south on Western Avenue. As the car approached Wendy's, Aponte observed that Soria was a passenger in the car. The car turned eastbound into the Wendy's lot, and Aponte saw Soria maneuver as if he were about to open the car door. Then, the driver, stipulated to be Soto, suddenly put the car in reverse, backed up slightly, then made a forward u-turn and screeched back onto Western Avenue travelling northbound. Aponte walked over to the street and looked, but did not see the Oldsmobile. Aponte relayed this information through his transmitter.

Shortly thereafter, Soria arrived again, from the north, this time on foot. Soria carried a brown paper bag with him. Aponte led Soria over to a pay phone, where Aponte opened the bag, which contained two kilos of cocaine. At this point, Aponte arrested Soria. About a minute and a half had elapsed since Soria's arrival on foot.

While this was occurring, DEA agent Frank Tucci, who was surveilling the Wendy's transaction from his car travelling westbound on 21st Place, saw the red Oldsmobile driven by Soto travelling eastbound on 21st Place. Tucci had received word via radio that Soria arrived at Wendy's in a red Oldsmobile with a white top. When Tucci saw the car, he began watching it as it moved slowly down 21st Place, which borders on Wendy's parking lot. The driver slowed the car to a stop and looked over to the spot by the pay phone where Soria and Aponte were conducting their deal. He watched for up to 15–30 seconds. Then, he drove further east on 21st Place, toward Western Avenue, and he stopped, again looking to his right toward Wendy's for another 15 or so seconds. Finally, he drove slowly away, stopping at a stop sign at

Western Avenue, onto which he made a southbound left turn. Tucci followed after Soto and located his car in the parking lot of a grocery store. Soto exited the grocery and returned to his car, at which time Tucci arrested him. Tucci recovered a paging device and a cellular telephone from Soto's car.

Soto disputed Aponte's and Tucci's account of these events. The parties stipulated that if Soto were to testify, he would assert that when he first arrived at Wendy's on March 6, 1989, he did not screech out of the Wendy's parking lot. Second, he would state that after leaving the parking lot, he drove north on Western Avenue to 21st Street, where he turned right. He turned right, again, into an alley behind Wendy's and then right onto 21st Place. He drove slowly westbound on 21st Place without stopping until he arrived at the intersection at Western Avenue, where he turned left.

On the day he was to be tried on drug charges stemming from the Wendy's transaction, Soto filed a motion to quash his arrest and to suppress evidence found in the red Oldsmobile on the ground that police lacked probable cause to arrest him. After a hearing at which the above evidence was adduced, District Judge Nordberg denied the motion.

## II. STANDARD OF REVIEW

The law applicable on review of a district court's denial of a motion to quash arrest and to suppress evidence for lack of probable cause is well settled. Soto's arrest was accomplished without a warrant. Thus, it is valid under the fourth amendment only if supported by probable cause. *United States v. Ingrao*, 897 F.2d 860, 862 (7th Cir.1990). We rely on the district court's factual findings unless they are clearly erroneous. *Id.* at 862; *United States v. Price*, 888 F.2d 1206, 1208 (7th Cir.1989) (citing *United States v. Lima*, 819 F.2d 687, 688 (7th Cir.1987). A finding is clearly erroneous " 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

made.'" *United States v. D'Antoni,* 856 F.2d 975, 978 (7th Cir.1988) (citation omitted).

Our review of the district court's finding of probable cause is *de novo.* *Ingrao,* 897 F.2d at 862. Police have probable cause to arrest an individual where " 'the facts and circumstances within their knowledge and of which they [have] reasonable trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense.'" *Ingrao,* 897 F.2d at 862 (quoting *United States v. Goudy,* 792 F.2d 664, 668 (7th Cir.1986) and *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964)). *See Lima,* 819 F.2d at 668 (quoting same standard). Probable cause " 'requires only a probability or substantial chance of criminal activity [and] not an actual showing of such activity;'" however, mere suspicion is not enough. *Ingrao,* 897 F.2d at 862 (quoting *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Furthermore, in *Ingrao* we held that mere presence at or proximity to a crime scene, without more, will not support a finding of probable cause. *See* 897 F.2d at 862–66 (reversing finding of probable cause where defendant was observed carrying a bag down a gangway previously used in suspicious transactions).

## III. PROBABLE CAUSE TO ARREST

Soto does not specifically dispute the district court's factual findings; however, his brief reiterates his stipulated testimony that he did not "screech" out of the Wendy's parking lot and that when he looped around the Wendy's and drove west on 21st Place, he did not stop to look in the direction of Wendy's, where Aponte and Soria were making their transaction, but that he drove uninterrupted toward Western Avenue without looking at his former passenger, Soria. The district court rejected this testimony as unbelievable and, specifically as to Soto's claim that he did not look over to the parking lot during his driveby, as being against human nature. Thus, the court chose to rely on the testimony of

agent Aponte, who said that Soto "screeched" out of Wendy's and of Agent Tucci, who stated that Soto stopped twice on 21st Street to peer at the situation at Wendy's. Neither Tucci's nor Aponte's testimony was impeached in any significant manner.

■ The "clearly erroneous" standard applies to the district court's credibility findings. *United States v. D'Antoni,* 856 F.2d 975, 978 (7th Cir.1988). When there are two permissible views of the evidence, " 'the factfinder's choice between them cannot be clearly erroneous.'" *Id.* at 978–79 (citation omitted). Thus, the district court's findings crediting Tucci's and Aponte's testimony were not clearly erroneous.

As to the district court's finding of probable cause, Soto relies heavily on *United States v. Everroad,* 704 F.2d 403 (8th Cir. 1983), in arguing that the police did not have probable cause to arrest him. In *Everroad,* the court found that there was no probable cause to arrest the defendant where his only connections to criminal activity were that he was associated with known drug dealers who were the subject of a drug investigation and that he was in the area where a drug transaction had taken place. *See Id.* at 406. In *Ingrao,* we recognized that these factors, alone, do not establish probable cause to arrest. *See Ingrao,* 897 F.2d at 863 (citing *Everroad,* 704 F.2d at 407).

The government counters that the circumstances surrounding Soto's arrest are more akin to those in *United States v. Lima,* 819 F.2d 687 (7th Cir.1987). In *Lima,* the defendant was not only associated with drug dealers who were the subject of a drug investigation and in proximity to a drug transaction; he parked his car behind the car whose occupants were the subject of the investigation and made contact with them during a drug transaction. Although the defendant fled from the scene when police arrested their suspects, we found that probable cause existed prior to the defendant's flight. *Lima,* 819 F.2d at 689–90.

In this case, the district court relied on the following facts to find that police had probable cause to arrest Soto: (1) the agents knew Soria was a drug runner involved in the distribution of drugs; (2) the agents knew that Soria's source was apprehensive about being in the area; (3) Soria told the agents he was going to call the source and that he would be returning later with the drugs; (4) Soria left Wendy's travelling south on Western Avenue, and returned with the drugs in the red Oldsmobile, driven by Soto, from the south on Western Avenue; (5) Soto entered the Wendy's parking lot and then suspiciously made a u-turn and exited, tires screeching, back onto Western Avenue northbound; (6) it appeared to Aponte that Soria was attempting to get out of the car when Soto suddenly exited the parking lot; (7) shortly thereafter, Soria came walking from the north with the drugs to make the sale; (8) instead of leaving the scene, Soto returned and looped around the Wendy's, turning onto 21st Place, stopping twice to watch the transaction at Wendy's.

Soto's activity amounts to far more than the mere association with known drug dealers and the mere presence at the scene of a drug transaction found in *Everroad* and *Ingrao.* Soto drove Soria to the scene of the drug transaction. When he arrived at Wendy's, he turned into the parking lot, but suddenly changed his mind and made a u-turn and sped off. From this action, the police could at least begin to have substantial suspicion that the driver of the car was more involved with Soria than as a mere chauffeur. Furthermore, it is apparent that Soto dropped Soria off somewhere north of Wendy's. Instead of staying away from the scene, however, Soto returned. He did so in a manner suggesting, not that he was merely driving by on his way to his destination, but rather, he looped all the way around the Wendy's onto 21st Place, where he happened to be driving by the area where the drug transaction was taking place. While doing so, Soto stopped twice to observe Soria and Aponte. This indicates that Soto had more than passing interest in what was happening. Agent Tucci could reasonably infer

from this behavior, and the district court so found, that Soto was making sure that the drug transaction occurred smoothly.

For the foregoing reasons, we find that agent Tucci had probable cause to arrest Soto. Therefore, we AFFIRM the district court's denial of Soto's motion to quash arrest and suppress evidence.