**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**Angelo INGRAO, Defendant–Appellant.**

**No. 89–2117.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 17, 1990.

Decided Feb. 27, 1990.

Rehearing Denied April 30, 1990.

Thomas M. Durkin, Asst. U.S. Atty., Donna B. More, Office of the United States Attorney, Chicago, Ill., for plaintiff-appellee.

Peter J. O'Malley, James A. Graham, Glenn Seiden, Chicago, Ill., Angelo Ingrao, Park Ridge, Ill., for defendant-appellant.

Before POSNER, FLAUM and RIPPLE, Circuit Judges.

FLAUM, Circuit Judge.

On June 24, 1988, Angelo Ingrao was observed by agents of the Federal Bureau of Investigation (FBI) and officers of the Chicago Police Department walking down a gangway, previously used in a suspicious transaction, carrying an opaque black bag. The agents and officers followed Ingrao and stopped him while driving in his car. He was immediately removed from the car, placed face down on the ground and handcuffed. Members of the FBI and police then proceeded to remove his keys from the ignition and to open the trunk of his car. Once the trunk was open, the agents removed a black opaque bag and opened it, discovering cocaine. Ingrao was later convicted of possession with the intent to distribute 4,007 grams of cocaine. Ingrao now appeals his conviction and the denial of his motion to quash his arrest and suppress the evidence seized by the agents based on the lack of probable cause to arrest him. For the following reasons, we reverse the district court's denial of his motion to quash his arrest and suppress the evidence.

I. Facts

The events leading up to Ingrao's arrest began in November of 1987, when the FBI commenced a narcotics investigation of an individual named Frank Gigliotti. On the morning of June 24, 1988, FBI agents, with the assistance of the Chicago Police, began a surveillance of Gigliotti at one of his residences. Gigliotti left that address driving a motorcycle and later stopped at a gas station to make a few telephone calls from a pay phone. The agents followed Gigliotti from the gas station to two motorcycle shops and then to a social club called the Friends of the South Club. After remaining approximately fifteen minutes at the club, Gigliotti then drove to his second residence, at 3453 Narragansett Ave., arriving at approximately 12:00 p.m. Gigliotti parked outside of the residence and disappeared from the view of the agents when he walked down a gangway between 3453 and 3459 Narragansett, presumably entering his house.

At approximately 1:00 p.m., Agent Roberts observed a red Corvette pull up in front of 3453 Narragansett. The driver of the car was male and the passenger female. As the red Corvette approached, a man came out from the gangway located between 3453 and 3459 Narragansett and met the car. That person was not Gigliotti or Ingrao. A package appearing to be a gym bag was passed from the female passenger to the unknown man standing on the side of the street. Thereafter, the Corvette left, and the man carrying the package returned down the gangway disappearing from sight. The agents testified at trial that the Corvette then circled the area. At about 1:30 p.m., another man, unknown at the time but later identified as Ingrao, was observed walking out from the gangway. Ingrao was carrying a black opaque bag, but not the bag passed from the Corvette. Agents testified that as Ingrao walked toward the curb, he looked around the surrounding area. They further testified that as he crossed the two lane street he looked both ways. Ingrao proceeded across the street to the rear of a yellow Cadillac and opened the trunk. While placing the black bag into the trunk, Ingrao again looked about. He then closed the trunk, got into his car and drove away.

Minutes after the defendant left Narragansett Ave., agents observed the same man as before emerge from the gangway carrying a small white package. The red Corvette returned and the man handed the driver the package. After a brief conversation, the car pulled away. Agents attempted to follow the Corvette but lost it in traffic.

Meanwhile, several of the agents were following Ingrao in the Cadillac. Ingrao drove directly toward the Friends of the South Club. The agents testified that while driving to that social club Ingrao looked several times in his rear view mirror. He was also observed using a car telephone while en route. Upon reaching the club, Ingrao went inside for approximately 45 minutes.

When Ingrao left the club, he was accompanied by an unknown man. They entered Ingrao's car and drove to the Cacciatore Club. Both individuals entered that social club and came out about five minutes later. Ingrao and the man entered the car again and proceeded to drive south. A few minutes later, the police and FBI moved in and stopped Ingrao's vehicle.

The agents and officers arrested Ingrao removing him from his car and placing him face down on the ground, handcuffing him behind his back. Officer Harris removed the keys from the ignition, opened the trunk and looked inside the black bag where he viewed four "brick-like" objects wrapped in duct tape, which he concluded appeared to be kilograms of cocaine. Inside the glove compartment, agents seized four or five packages of money bound together with rubberbands and slips of paper which had names and amounts of money written on them. Ingrao requested to speak with an attorney, at which time all questioning stopped, and he was transported to the Metropolitan Correction Center.

Prior to trial, Ingrao moved to quash his arrest and to suppress all of the evidence seized, arguing the warrantless arrest and search were not supported by probable

cause. After a two-day hearing, the trial court denied Ingrao's motion, concluding the agents had probable cause to arrest and search.

After waiving a jury trial, Ingrao was convicted by the district court of possession with the intent to distribute 4,007 grams of cocaine. Ingrao now appeals his conviction and the denial of his motion to quash his arrest and suppress the evidence seized by the agents.

## II. Standard of Review

It is undisputed that the stop of the defendant was a warrantless arrest. Ingrao was stopped in his car, immediately removed, and placed face down on the ground and handcuffed. Such an arrest is valid under the fourth amendment only if supported by probable cause. *Beck v. Ohio,* 379 U.S. 89, 90, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964). Therefore, the primary issue raised on appeal is whether the facts in this case are sufficient to establish probable cause to arrest Ingrao and search his car. For purposes of review, we must rely on the district court's factual findings unless they are clearly erroneous. *United States v. Price,* 888 F.2d 1206, 1208 (7th Cir.1989); *United States v. Lima,* 819 F.2d 687, 688 (7th Cir.1987). Review of the district court's determination of probable cause, however, is *de novo. United States v. Jaramillo,* 891 F.2d 620, 626 (7th Cir. 1989); *Price,* 888 F.2d at 1208; *United States v. Patino,* 862 F.2d 128, 132 (7th Cir.1988).

The test for probable cause to arrest without a warrant was established by the Supreme Court in *Beck. See also United States v. Hairston,* 763 F.2d 233 (7th Cir. 1985). In *Beck,* the Court held, "the police have probable cause to arrest an individual where 'the facts and circumstances within their knowledge and of which they [have] reasonable trustworthy information [are] sufficient to warrant a prudent [person] in believing that the [suspect] had committed or was committing an offense.'" *United States v. Goudy,* 792 F.2d 664, 668 (7th Cir.1986) (quoting *Beck,* 379 U.S. at 91, 85 S.Ct. at 225). *See also Price,* 888 F.2d at 1208–1209. While probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity," mere suspicion is not enough. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Serna–Barreto,* 842 F.2d 965, 966 (7th Cir.1988). *See also Price,* 888 F.2d at 1209. Rather, as Judge Posner stated in *Serna–Barreto,* there must exist a high degree of suspicion to arrest without a warrant: "An arrest is a profound and deeply resented interference with the liberty of the person, and to allow police to arrest people on anything less than a high degree of suspicion would restrict personal liberty more than has been justified by the needs of public security." *Serna–Barreto,* 842 F.2d at 966. We now turn to an analysis of those facts the government alleges support the district court's finding of probable cause.

## III. Probable Cause to Arrest

We do not dispute nor do we disturb the trial court's finding of facts. Indeed as the district court noted, there is not any real dispute over the events in the case. Instead, we address whether the court's finding that under these set of circumstances there was sufficient probable cause. The district court appropriately noted before making its eventual determination that defendant's motion was a "serious, nonfrivolous motion with respect to ... the government's actions here," thus recognizing the potential difficulties attendant the law enforcement agents' conduct. The trial court, however, after carefully weighing and considering all the evidence of the events surrounding Ingrao's arrest, concluded that, when viewed as a whole, the agents' actions were supported by probable cause.

The district court looked to a series of several factors to determine that the arrest of Ingrao was supported by probable cause. These included: (1) Gigliotti was a known narcotics trafficker, (2) Gigliotti had two residences but stopped to use a pay phone, (3) the arrival of the Corvette, the passing of a package, the subsequent re-

turn of the car, and the passing of another package, (4) Ingrao walked out of the gangway carrying a black bag, and (5) furtive gestures and cautious driving by Ingrao. The court concluded that as a whole these factors established the required probable cause. We respectfully disagree, finding instead that the government's case is insufficient to support a finding of probable cause as a matter of law.

At the outset we note the inherent difficulties involved when an appellate tribunal, sitting in review long after the events in question and detached from the daily pressures and exigencies involved in police investigations, undertakes a review of probable cause. We review the knowledgeable district judge's findings well-aware of these difficulties but nonetheless feel constrained to conclude that the officers lacked the requisite probable cause to arrest Ingrao. We turn to our review of each of the aspects of the case relied on by the district court.

The first fact relied on by the trial court as part of the series of events establishing probable cause is that Gigliotti is a known narcotics trafficker. Although this may well be true, without more, it cannot legally raise suspicion concerning Ingrao. At no time was Ingrao known to associate with Gigliotti or seen with him on the day of Ingrao's arrest. In fact, the testimony of one of the arresting agents was that he "had not personally seen Mr. Ingrao meet Mr. Gigliotti." At most, therefore, this information may contribute to a possible probable cause determination about Gigliotti but it is not sufficient to raise reasonable suspicion regarding Ingrao.

The second matter considered important by the trial court was that Gigliotti had two residences but found it necessary on the way from one to the other to stop at a public pay phone and make phone calls. From these actions, the court concluded, agents could reasonably suspect that preparations were being made for a narcotics transaction. Accepting this factual finding, this conduct is also only probative of Gigliotti's activities, not those of Ingrao. There exists no evidence that Gigliotti was communicating with Ingrao or that Ingrao was in attendance at any of Gigliotti's residences. Therefore, Gigliotti's activities should not be, in our view, appropriately imputed to Ingrao in this particular probable cause inquiry.

The third determining event in the series was the incident involving the red Corvette. The court concluded that the arrival of the Corvette, the passing of a package from the car to a man that came out of the gangway serving Gigliotti's house and the subsequent return of the car and passing of a different package to the Corvette enabled the agents to believe a narcotics transaction was occurring. This also may well be true, but cannot be found to implicate Ingrao. The man that met the Corvette on both of its trips to 3453 Narragansett Ave., while unidentified, was not Ingrao. Ingrao was not connected to any of these transactions; he was merely seen walking down the same gangway. Clearly physical proximity to a suspected crime, without other indicia of Ingrao's involvement, is insufficient to support a finding of probable cause. *United States v. Everroad,* 704 F.2d 403, 407 (8th Cir.1983).

Next, the single most important element of the government's position, is the agents' observations of Ingrao walking out of the gangway carrying a black bag. This was the same gangway used by Gigliotti and the unknown man and must be the centerpiece of any probable cause that Ingrao was involved with narcotics. This gangway, as described by the trial court and reflected in the record, is shared by at least two houses, numbers 3453 and 3459 Narragansett.[1] Ingrao was observed by the agents emerging from the gangway but could not be seen from their stakeout positions exiting Gigliotti's house. Other than using the same walkway as that used by Gigliotti and the unknown man, there remains no connection between Ingrao and any of the alleged criminal activities. In fact, the agents possessed no information

1. It is unclear from the record how many houses were served by the gangway. It may have served a whole housing complex or only the two known residences.

at all about Ingrao. Testimony at trial indicated that none of the agents observed Ingrao engage in any illegal activity and none recognized him as anyone they knew anything about. At that point, arguably, Ingrao could be an innocent acquaintance of Gigliotti, or a resident or visitor of another house, or a salesman, or someone merely walking down the street. Moreover, "[i]n order to find probable cause based on association with persons engaging in criminal activity, some additional circumstances from which it is reasonable to infer participation in criminal enterprise must be shown." *United States v. Hillison,* 733 F.2d 692, 697 (9th Cir.1984). *Ceballos,* 654 F.2d at 185 (a short visit to a known criminal, without more, does not provide probable cause for arrest). The added fact that Ingrao was carrying a bag, while arguably contributing to probable cause, does not add significantly to any already existing suspicion by the police. *United States v. Ceballos,* 654 F.2d 177, 185 (2nd Cir.1981) (the carrying of a paper bag alone does not provide enough to conclude a narcotics offense is being committed). The bag was not the same bag passed from the Corvette and it did not assume the shape of any container that may have been inside.[2] Even if one were to assume Ingrao left Gigliotti's house before using the gangway this would still only add a minimum degree of suspicion to the overall probable cause determination.

The government sought to bolster the existence of probable cause by the so-called "furtive gestures" made by Ingrao as he exited the gangway. In *United States v. McCarty,* 862 F.2d 143, 147 (7th Cir.1988), we determined that furtive gestures are probative in determining probable cause. Here, the agents testified that Ingrao looked "to his right and to his left" while crossing the two-lane street, opening his trunk, and entering his car. While the trial court found these gestures were not reflective of activity by an innocent person, we suggest that such activity might well be quite consistent with the normal behavior involved with crossing a two-lane street. Nonetheless, the district court determined the gestures were suspicious and we accept this conclusion. Furtive gestures may be significant to the trained observer to help establish probable cause, but are more meaningful when coupled with other specific knowledge. *United States v. McGlynn,* 671 F.2d 1140, 1144 (8th Cir.1982). This case remains barren of other specific knowledge by the agents regarding Ingrao and therefore, the furtive gestures add little to the government's case.

Finally, we consider the final factor applied by the district court in its probable cause determination. Both the government in its argument before us and the district court in its decision found it significant that Ingrao drove within the speed limit observing all traffic regulations and regularly looked into his rear view mirror while he was driving. The district court concluded that it was reasonable for the officers to infer from Ingrao's behavior that his motive was to avoid violation of the traffic laws and to carry out counter-surveillance because he was carrying contraband. This position stands somewhat at odds with other arguments the government has previously made before this Court, as well as

2. This is illustrated by an excerpt of testimony from the district court:

Attorney Seiden: When you observed Mr. Ingrao leave the address of 3453 Narragansett with something in his hand you described it as a black or at least very dark colored bag; is that correct?

Agent Trocolli: Yes.

. . . . .

Attorney Seiden: And it assumed the shape that gravity intended it to assume as opposed to what the container was inside; is that right?

Agent Trocolli: Yes, Sir.

Attorney Seiden: For all you knew at that time it could have been drugs in a package is that correct?

Agent Trocolli: Could have been.

Attorney Seiden: Could have been money?

Agent Trocolli: Could have been.

Attorney Seiden: Could have been yesterday's laundry?

Agent Trocolli: Could have been.

Attorney Seiden: Could have been a newspaper?

Agent Trocolli: Yes.

Attorney Seiden: It could have been anything; is that correct?

Agent Trocolli: Yes.

before other courts, that suspicious and evasive driving techniques are probative in establishing probable cause. *United States v. Colonia,* 870 F.2d 1319, 1326 (7th Cir.1989) (roundabout motoring is a factor to establish probable cause); *United States v. Marin,* 761 F.2d 426, 432 (7th Cir.1985) (agents observation of defendant's circuitous driving to an address is a factor that can be considered in establishing probable cause). *United States v. Ocampo,* 650 F.2d 421, 426 (2nd Cir.1981) (driving in a manner calculated by agents to elude surveillance is an activity relevant to probable cause). The government now advances the proposition that careful, nonevasive driving within the law can be suspicious activity and may be used as a fact to establish probable cause. The government overreaches with this position in this case. The mere act of cautious driving should not become a suspicious element toward establishing probable cause under normal circumstances. No court has gone this far. We have not found any cases that support the government's tenuous position, and we are not prepared to adopt it in the context of the case before us. The mere lawful operation of a motor vehicle should not be considered suspicious activity absent extraordinary contemporaneous events.

The government also offers the observation that Ingrao looked several times in his rear view mirror to help strengthen their proof of Ingrao's furtive gestures, suggesting he was engaged in further counter-surveillance. Although under some circumstances such activity may be considered furtive, it is again quite consistent with innocent driving behavior. It may be that Ingrao was wondering why he was being followed or as the trial judge pointed out, it may just be that Ingrao is an extremely careful driver.

It is our judgment, like that of the district court, that no single item of the government's evidence is sufficient in establishing the degree of suspicion needed for probable cause. The district court necessarily and appropriately considered the entire series of events when concluding there was sufficient probable cause. Respectfully, our *de novo* review of the probable cause determination leads us to conclude to the contrary. It is our opinion that a prudent person could not reasonably believe that, based on the evidence known by the agents, Ingrao had committed or was committing a crime. As discussed above, and as relied on by the trial court, the fact that Gigliotti was a known narcotics trafficker and that he used a pay phone, do not, in our view, raise any meaningful suspicion attributable to Ingrao. The latter events, although probative under some circumstances, are not sufficiently supported by other facts to establish probable cause. The mere acts of carrying a bag down a common gangway, looking around while crossing the street, and obeying the traffic laws are innocent acts the agents used to justify their arrest. They are insufficient as a matter of law to establish probable cause. It is not known if Ingrao accessed the gangway from Gigliotti's house or from some area totally removed from association with Gigliotti. Even if we were to assume Ingrao left Gigliotti's house, as the district court apparently found was a reasonable belief of the agents, it only raises some suspicion. It would have to be supported by additional evidence to satisfy the level of suspicion necessary for probable cause. In this case, there was an absence of any suspicion of criminality in Ingrao's collective observable conduct. Furthermore, no association was established between Ingrao and Gigliotti. We also believe that furtive gestures while relevant to a probable cause determination do not add up to meaningful suspicion here. Additionally, we conclude the observations concerning Ingrao's driving should not have been considered in this case and thus offer no assistance in determining the probable cause calculus. The cumulative evidence therefore stands insufficient as a matter of law to "warrant a man of reasonable caution in the belief that [Ingrao] committed a crime." *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925).

We recognize that the officers clearly had grounds for some suspicion towards Ingrao. We take no position as to whether

that suspicion would have been sufficient to support a valid *Terry* stop but conclusively believe that it was insufficient to support the intrusion of a full-blown arrest. In reaching this conclusion we are mindful of the difficulties and dangers presented to law enforcement officers in their vigilant efforts in investigating and bringing drug traffickers to justice. Nonetheless, the fourth amendment cannot become an additional casualty in society's efforts to combat and defeat the drug crisis.

In sum, Ingrao appears to have been arrested principally because he carried a bag down a gangway previously used in a suspicious transaction and furtively looked around. Without more, we are constrained to conclude that the warrantless arrest of Ingrao was without probable cause and thus violated the fourth amendment. It follows from the illegality of Ingrao's arrest that the evidence seized from his car must be suppressed as fruits of the poisonous tree. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Edwards,* 885 F.2d 377, 383 (7th Cir.1989) ("search and seizure incident to an arrest must be incident to a lawful arrest.") (citing *United States v. Janik,* 723 F.2d 537, 548–49 (7th Cir.1983)).

IV. Conclusion

Accordingly, we reverse the district court's finding of a warrantless arrest supported by probable cause and grant Ingrao's motion to quash his arrest and suppress the evidence obtained pursuant to the invalid arrest. For the reasons stated above, the conviction of Angelo Ingrao is REVERSED.