993 F.2d 1550
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff/Appellee,
v.
Arnetta ISLAND, Defendant/Appellant.
 No. 92-3864.
 United States Court of Appeals, Seventh Circuit.
 Submitted May 12, 1993.*
Decided May 14, 1993.
 
 Before BAUER, Chief Judge, and EASTERBROOK AND RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 On September 3, 1992, Arnetta Island pleaded guilty to one count of possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1). Island entered a conditional plea under Federal Rule of Criminal Procedure 11(a)(2), preserving her right to appeal the district court's denial of her suppression motion. Island now appeals the district court's refusal to suppress evidence as a result of an alleged illegal search and seizure in violation of the Fourth Amendment. The district court found that Island had been detained based upon probable cause that she had committed welfare fraud and was engaged in drug trafficking. The court further found that the subsequent search of her body was conducted after her voluntary consent.
 
 
 2
 used the name of a friend named Arnetta Island to obtain welfare benefits in California. The officers thereupon told Island that she was no longer free to leave because they suspected her of welfare fraud. The officers detained Island in a room off the concourse while they called California authorities to check out her story. Mount again asked Island whether she would consent to a search of her upper body, and revealed that the officers suspected that Island was carrying drugs. Island refused to consent to a search.
 
 
 3
 The officers informed Island that they were going to attempt to obtain a search warrant. Island asked Mount what would happen to her child if she were arrested. Mount replied that the child would be placed in a guardian home. While Mount completed the warrant, Island conversed with two other officers and stated that she was apprehensive about the prospect of her child being placed in a guardian home. Island informed Mount that she preferred that her child be allowed to leave with Pezzarossi. Mount assented to giving Pezzarossi custody of the child, but he explained that his agreement was not conditioned on Island's consent to a search. Pezzarossi was allowed to leave with Island's child.
 
 
 4
 Island then executed and signed a consent form authorizing a search of her entire body. Two hours had passed between the initial stop in the airport concourse and Island's consent to the full body search. Cotton conducted a full body search of Island and discovered more than 500 grams of cocaine.
 
 
 5
 Island's motion to suppress alleged that the agents did not have sufficient grounds for arrest. The defendant contended at the suppression hearing that she was seized when she was first taken into the women's restroom for the initial search. The defendant also asserted that the eventual consent to the full body search was involuntary because it was obtained by intimidation and coercion. The district court determined that Island was first seized when the officers moved her to a room off the airport concourse, and that this arrest was fully supported by probable cause. The district court also found that Island's consent was freely and voluntarily given. On appeal, Island challenges the district court's finding that her consent to a search of her upper body was voluntary.
 
 II.
 
 6
 The district court found that the encounter between Island and the officers did not develop into a seizure until Island was detained in a room off the airport concourse after the initial consensual search. Island does not dispute the district court's determination of when the seizure occurred. Rather, Island contends that this seizure was unsupported by probable cause and that she was coerced into consenting to the second search by the "implicit threat" that her child would be placed in a guardian
 
 I.
 
 7
 On January 31, 1992, Indianapolis police officers Matthew Mount and Jan Cotton awaited the arrival of Island's flight at Indianapolis International Airport, returning from Oakland, California. The two narcotics detectives, members of the Airport Drug Interdiction Team ("ADIT"), had received information suggesting that Island was a drug courier.[1] The officers observed the suspect being greeted by a woman later identified as Jill M. Pezzarossi. The two officers approached Island, Mount identified himself as a police officer, and he asked if he could speak to Island. Island nervously identified herself as "Lisa Grant." She then allowed Mount to examine her airline ticket, which had been issued in the name of Lisa Grant. The encounter took place in an open concourse of the airport, and the defendant conceded at the suppression hearing that the officers were polite and nonthreatening.
 
 
 8
 Mount informed Island about the tip that the officers had received from Dallas/Ft. Worth and asked if she would allow searches of her baggage and person. Island consented to the search requests, left her bags with Mount, and went with Cotton to the women's restroom to be searched. Once inside the restroom, Cotton informed Island that she could decline to be searched and that she was free to leave. Island replied that she would only allow a search of her lower body. Cotton's restricted search revealed no contraband, but she observed that Island's bustline had an "unnatural" configuration that suggested that she was concealing something under her clothing.
 
 
 9
 While Cotton searched Island, Mount searched the defendant's baggage and found several documents bearing the name "Arnetta Island". Included among the documents were pieces of mail, an identification card for California welfare services, a check cashing card, and welfare checks. This discrepancy between the name given by the defendant and the name that appeared on the documents in her baggage prompted Mount to ask Pezzarossi if she knew the defendant's name. Pezzarossi replied that the defendant's last name was "Grant" but that she did not know her first name.
 
 
 10
 When Island returned to the concourse, Mount asked her about the documents in her baggage. The defendant responded that she had home.[2]
 
 
 11
 We review a district court's probable cause determinations for clear error. United States v. Spears, 965 F.2d 262, 268-71 (7th Cir.), cert. denied, 113 S.Ct. 502 (1992). Police have probable cause to arrest without a warrant when, at the time of arrest, "the facts and circumstances within their knowledge and of which they [have] reasonably trustworthy information ... sufficient to warrant a prudent [person] in believing the [suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). "While probable cause 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity,' mere suspicion is not enough." United States v. Ingrao, 897 F.2d 860, 862 (7th Cir.1990) (quoting Illinois v. Gates, 462 U.S. 213, 243 n. 13 (1983)).
 
 
 12
 The defendant offers no serious challenge to the district court's finding of probable cause for arrest. Instead she simply asserts that the finding of probable cause to detain for suspected welfare fraud and drug smuggling "obfuscat[es] ... the real issue of illegal seizure and detention." Contrary to the defendant's suggestion, her arrest was amply supported by probable cause that a crime had been committed. When confronted with the discrepancies between the name appearing on the documents in her luggage and her initial identification of herself to the officers, Island essentially admitted that she engaged in fraud to obtain welfare benefits in California. When Island made this concession, the officers had probable cause to believe that Island had committed welfare fraud and they were justified in detaining her. In addition, the record shows that among the facts articulated in support of the arrest were the following: (1) Island matched the ADIT drug courier profile; (2) Island was visibly nervous when approached by the officers; (3) the consensual search of Island's baggage yielded discrepancies between the name on her ticket and documents in her baggage; (4) Pezzarossi's inability to provide the officers with Island's first name, despite her prior claim that she and Island were close friends and roommates; and (5) the discovery of suspicious bulges in Island's bustline. An observed bulge or bulkiness suggestive of contraband smuggling has alone and with other facts been held to support a finding of probable cause. See, e.g., United States v. Jaramillo, 891 F.2d 620, 627 (7th Cir.1989) (bulge, evasive tactics, and drug smuggler "modus operandi" provided probable cause for arrest and search), cert. denied, 494 U.S. 1069 (1990); United States v. Palen, 793 F.2d 853, 858 (7th Cir.1986) (agent, upon noticing bulge, had probable cause to believe bulge contained illegal drugs and probable cause to search and arrest the defendant). The district court's finding that there was probable cause to arrest Island for either welfare fraud or drug smuggling was not clearly erroneous.
 
 III.
 
 13
 Having determined that the officers had probable cause to arrest Island, the subsequent search incident to her arrest was lawful. See Rawlings v. Kentucky, 448 U.S. 98, 111 (1980); Michigan v. DeFillipo, 443 U.S. 31, 35 (1979); Jaramillo, 891 F.2d at 627-28. While it was therefore unnecessary to obtain Island's consent to the second search, the totality of circumstances surrounding the search indicate that Island nonetheless freely and voluntarily consented to the search that led to the discovery of the cocaine. Mount testified at the hearing that he expressly told Island that her child would be allowed to leave with Pezzarossi even if Island did not consent to a search. Furthermore, the consent form signed by Island set forth her right to withhold consent and cautioned her that any articles found during the search could be seized and used as evidence. The warnings contained in the consent form "weight[ ] heavily toward finding that her consent was voluntary." United States v. Duran, 957 F.2d 499, 502 (7th Cir.1992) (citing United States v. Mendenhall, 446 U.S. 544, 558-59 (1980)).
 
 
 14
 AFFIRMED.
 
 
 
 *
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [1]
 On January 31, 1992, Cotton received a telephone call from Officer Jim Hughes of the Dallas/Fort Worth (Texas) Drug Interdiction Team. Hughes informed Cotton that earlier that day, a black female had paid cash for a one-way flight from Oakland to Indianapolis via Dallas/Fort Worth. Hughes revealed that the individual had not checked any luggage, carried only a small carry-on bag, and was accompanied by a small child. Cotton and Mount felt that this person fit the profile of a typical drug courier, and they decided to go to the Indianapolis airport to observe her arrival
 
 
 [2]
 Island also obliquely argues that she did not receive her Miranda warnings in a timely fashion and that this oversight vitiates her consent. In United States v. Glenna, 878 F.2d 967, 971 (7th Cir.1989), this court held that giving consent to search is not an incriminating statement protected by the Fifth Amendment. Therefore, failure to read the Miranda warnings to an arrested suspect before requesting consent to conduct a search cannot be a violation of the Fifth Amendment