**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued January 4, 2016
Decided July 8, 2016

**Before**

WILLIAM J. BAUER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 15-2161

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    *Plaintiff-Appellee*,<br><br>    *v*.<br><br>MARSHALL PAYNE,<br>    *Defendant-Appellant*. | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division.<br><br>No. 13 CR 174<br><br>Sharon Johnson Coleman,<br>*Judge*. |

**O R D E R**

In November 2012, law-enforcement officials arrested Marshall Payne (Marshall) and found two handguns in his car. Because Marshall had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, he was charged with knowingly possessing the handguns in violation of 18 U.S.C. § 922(g)(1). Marshall moved to suppress evidence relating to the discovery of the handguns, but the district court denied the motion. Marshall challenges this denial on appeal on the ground that the police lacked probable cause to arrest him. We find, however, that the police reasonably believed that a crime was afoot, based on information they had gathered during their investigation and on seeing Marshall run away from them shortly after he

noticed them. We also reject Marshall's argument that the police lacked probable cause to search his car after arresting him, since his flight from officers and his inculpatory post-arrest statements indicated that his car contained contraband. Marshall insists that these statements are inadmissible but we disagree: they were made voluntarily and without prompting by police. So we affirm the district court's denial of Marshall's motion to suppress.

## I.    BACKGROUND

The facts are largely undisputed. In 2012, the U.S. Drug Enforcement Agency and the Chicago Police Department (CPD) conducted a joint investigation of drug-trafficking activities in the Chicago area. Marshall and his brother Dwayne Payne (Dwayne) were two of the investigation's many targets. As part of the investigation, CPD obtained court authorization to tap various telephones being used by Dwayne and other targets.

On the evening of November 26, 2012, law enforcement agents intercepted three calls between Dwayne and a number that agents later matched with Marshall. At 7:45 p.m., the brothers discussed attending an outdoor memorial service later that evening during which Marshall could drop off guns with Dwayne. Twenty minutes later, Marshall called Dwayne to note that the guns were in a car near the service, and that Dwayne should call him when Dwayne arrived. Several minutes later, Marshall called again to alert Dwayne that a rival gang member was driving through the area, and to tell him that the guns were hidden under some "costumes" in the car.

Shortly after the third call ended, a team of five CPD officers drove to Marshall's location. Upon arrival, Officers John Dolan and Jorge Lopez saw Marshall standing near a parked Chrysler 300. Officer Dolan recognized Marshall from a set of photographs the investigative team had collected, and knew that Marshall drove a Chrysler based on an earlier intercepted phone call between Marshall and Dwayne. Next to arrive were Officers Edward Zablocki and Herb Bettencourt. Officer Zablocki ran the Chrysler's license plates and discovered that they were registered to Marshall.

The officers then saw Marshall reenter the Chrysler and reach toward the back of the car. Shortly thereafter, Marshall left the Chrysler, locked it with a key fob, and ran away, prompting Officer Bettencourt to pursue him on foot. Marshall threw the key fob onto the roof of a CVS Pharmacy before the officers apprehended him. While Marshall was being handcuffed and taken into custody, Officer Zablocki informed the other officers via handheld radio that there appeared to be children's costumes in the back seat of the Chrysler. According to Officer Dolan, Marshall admitted without any prompting

by officers that there were two guns in the back of the Chrysler and offered to give them to the officers in exchange for being set free. (Marshall disputes this point.) Marshall was placed into the back of a squad car and given a *Miranda* warning. According to Officer Dolan, Marshall then consented to a search of the Chrysler but asked that the car first be taken to the police station. (Marshall disputes this, too.) The officers ultimately retrieved the key fob, opened the car, and discovered the guns underneath the costumes. The Chrysler was transported to a nearby police station and searched.

Marshall received a second *Miranda* warning after arriving to the station and before further questioning began. He then provided information about why he had the guns and from whom he had gotten them. He was later charged with violating 18 U.S.C. § 922(g)(1), which prohibits felons from knowingly possessing firearms.

Marshall initially pled not guilty and filed a motion to suppress his post-arrest statements and the evidence recovered during the search of his car. In the motion, he claimed that the officers lacked probable cause to arrest him and to search his car, and that his statements to officers were inadmissible because he had not received timely *Miranda* warnings from police. An evidentiary hearing was held during which Officers Dolan and Zablocki testified. Following the hearing, the district court rejected Marshall's arguments and denied the motion. Marshall then entered a conditional plea of guilty—reserving his right to appeal the denial of the motion—and was sentenced to eighty-eight months in prison and two years of supervised release. This appeal followed.

## II.    ANALYSIS

When reviewing a district court's ruling on a motion to suppress, we review questions of fact for clear error and questions of law such as probable cause de novo. *United States v. Uribe*, 709 F.3d 646, 649 (7th Cir. 2013). We give substantial deference to the district court's determinations of witness credibility. *United States v. Gonzalez-Ruiz*, 794 F.3d 832, 835 (7th Cir. 2015).

### A.    Officers Had Probable Cause to Arrest Marshall

In order to make a lawful arrest without a valid arrest warrant, a police officer must have probable cause to believe that a crime has been committed. *United States v. Daniels*, 803 F.3d 335, 354 (7th Cir. 2015). Probable cause exists when the totality of the facts and circumstances within the officer's knowledge supports an objectively reasonable belief that the suspect has committed an offense. *Id.* A finding of probable cause does not require "evidence sufficient to support a conviction, nor even evidence

demonstrating that it is more likely than not that the suspect committed a crime." *United States v. Sawyer*, 224 F.3d 675, 679 (7th Cir. 2000). Rather, the evidence need only "reveal[] a probability or substantial chance of criminal activity on the suspect's part." *Id.*

Here, the officers clearly had probable cause to arrest Marshall. The November 26 calls that CPD intercepted described a proposed firearm exchange at the exact intersection where police later found Marshall. At the scene, the officers recognized Marshall from photos collected in the course of the joint investigation and saw him standing next to a Chrysler—a car they knew he owned based on other intercepted calls and a contemporaneous registration check of the Chrysler plates. The officers also saw Marshall reach into the back of the Chrysler shortly before he locked the car, ran away from it, and threw the key fob onto the roof of the CVS. These facts gave the officers ample grounds for believing that Marshall was unlawfully in possession of firearms.

Marshall ignores these facts and argues instead that he was not the focus of the joint investigation, claiming that none of the phone numbers used during the November 26 calls had been previously linked to him, and that his phone number was implicated only after his arrest. But this ignores contradictory testimony elicited at the suppression hearing. Officer Dolan testified that both Dwayne *and Marshall* were targets of the joint investigation. He also testified that before November 26, CPD had intercepted calls between Dwayne and a then-unknown individual using the same number linked to the November 26 calls. During these earlier calls, Dwayne and the individual discussed the latter's acquisition of a Chrysler and referred to one another as "bro." We recognize that this term is not always used between family members. But the men used this term repeatedly and noted that "mommy" knew about the Chrysler purchase. So there was reason to suspect that the men might be related.

Marshall's reliance on *United States v. Ingrao*, 897 F.2d 860 (7th Cir. 1990), is misplaced. In *Ingrao*, we reversed the denial of a motion to suppress where law enforcement agents had arrested the defendant and searched his car based solely on the fact that the defendant had been walking with a black bag down a gangway where a suspicious transaction had previously occurred. *Id.* at 862–64. But unlike *Ingrao*, the case here is not "barren of … specific knowledge" about Marshall beyond his mere presence at the scene. *Id.* at 864. The various intercepted calls and Marshall's suspicious behavior amounted to probable cause.

### B. Marshall's Post-Arrest Statements Are Admissible

*Miranda v. Arizona*, 384 U.S. 436 (1966) instructs that "a suspect interrogated by

law enforcement officers while in custody must be notified of his constitutional rights to counsel and against self-incrimination." *United States v. Hendrix*, 509 F.3d 362, 373 (7th Cir. 2007). But not all statements are the product of "interrogation," which refers to "express questioning as well as any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response." *United States v. Swanson*, 635 F.3d 995, 1002 (7th Cir. 2011) (citation and internal quotation marks omitted). The critical question is "whether a reasonable objective observer would have believed that the law enforcement officer's statements to the defendant were reasonably likely to elicit an incriminating response." *Hendrix*, 509 F.3d at 374 (citing *United States v. Abdulla*, 294 F.3d 830, 834 (7th Cir. 2002)). Voluntary admissions, however, do not fall within *Miranda*'s ambit and are generally admissible. *Id.*

Marshall argues that the incriminating statements he made to police immediately following his arrest are inadmissible because they were made involuntarily and before he received any *Miranda* warnings. But Officer Dolan testified that Marshall's statements were made "spontaneously," and Marshall does not claim that the district court erred in crediting Officer Dolan's testimony. Nor did Marshall elicit any testimony or proffer any evidence suggesting that his statements were responsive to any question from law enforcement. Because Marshall has not shown that his statements were the product of an interrogation, they are admissible. And since his arrest was supported by probable cause, his statements are not fruit of the poisonous tree. *United States v. Slone*, 636 F.3d 845, 851 (7th Cir. 2011).

## C. Officers Had Probable Cause to Search Car

Warrantless searches are "*per se* unreasonable under the Fourth Amendment —subject only to a few specially established and well-delineated exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (citation and internal quotation marks omitted). Under one such exception—the automobile exception—the police "do not need a warrant to search a vehicle when they have probable cause to believe it contains evidence of criminal activity." *United States v. Edwards*, 769 F.3d 509, 514 (7th Cir. 2014). Probable cause exists when, based on the totality of the known facts and circumstances, "a reasonably prudent person would believe that contraband or evidence of a crime will be found in the place to be searched." *United States v. Richards*, 719 F.3d 746, 754 (7th Cir. 2013) (citation and internal quotation marks omitted). When probable cause exists, law enforcement may search "any area of the vehicle in which the evidence might be found." *Gant*, 556 U.S. at 347.

Marshall contends that probable cause was absent regarding the officers' search of his car. In support, he notes that his car had not been linked to any criminal activities during the joint investigation, that the phone calls intercepted on November 26 did not reference any specific vehicular make or model, and that the guns were not in public view. But Marshall ignores multiple critical events that transpired *after* the police arrived to the scene—in particular, Marshall's reaching toward the backseat while in the car, his flight from officers, and his inculpatory post-arrest statements.

Marshall also overlooks the reasonable inferences to be made when comparing these actions with the officers' prior knowledge about Marshall and the content of the intercepted calls. *See United States v. Charles*, 801 F.3d 855, 858 (7th Cir. 2015) (holding that officer had probable cause to search car for gun based on 911 caller's statements and officer's subsequent observations at scene that defendant matched caller's description). So the district court did not err in concluding that the officers had probable cause to search the Chrysler before transporting it to the police station, based on the belief that it contained contraband. And because the automobile exception applies, we need not address the government's alternate argument that the search was lawful based on Marshall's alleged voluntary consent and the inevitable discovery doctrine.

## III.     CONCLUSION

The judgment of the district court is AFFIRMED.