In the

# United States Court of Appeals
## For the Seventh Circuit
_____

No. 17-2412

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

DEVON M. HOWARD,

*Defendant-Appellant.*

_____

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:14-cr-99 — **J. P. Stadtmueller**, *Judge.*

_____

ARGUED FEBRUARY 8, 2018 — DECIDED FEBRUARY 26, 2018

_____

Before FLAUM, EASTERBROOK, and MANION, *Circuit Judges.*

FLAUM, *Circuit Judge.* In April 2014, a Verizon store in the
Milwaukee area was robbed. Prior to the robbery, witnesses
in the store noticed a Mercedes sitting in the parking lot for
an extended time. Just before the robber entered through the
store's rear door, the Mercedes drove to the back of the store.
As the robber fled, the Mercedes sped away at a high speed.
Police stopped the Mercedes and arrested its occupants, in-
cluding defendant. He moved to suppress evidence obtained

after his arrest, arguing police lacked probable cause. The district court denied that motion. We affirm.

## I. Background

On April 4, 2014, a Verizon store located in Hartford, Wisconsin was robbed. Hartford Police Department (HPD) Sergeant Timothy Hayes conducted the investigation. He spoke with two eyewitnesses: Eric Safranski, a Verizon employee, and Marshall Retler, a customer. According to the witnesses, the robber, later identified as Londell King, entered through the rear of the store, threw a black duffle bag on the ground, and demanded cell phones. When his demands were not immediately met, King pulled out a pistol. After Safranski provided cell phones from the store's inventory, the robber ran out the back door of the store.

Both witnesses noticed a suspicious Mercedes in the Verizon store's parking lot in the moments preceding and following the robbery. In Sergeant Hayes's words:

> They had said that shortly before the robbery took place there was a tan Mercedes that was in front of the store with two subjects inside; and they appeared—in their opinion [to be] watching them, watching the store. The individuals in the car did not go into any of the stores. They simply stayed and watched the store. After doing this for a few minutes, the Mercedes drove to the rear of the building out of their sight. And shortly after [the Mercedes] went back there, the individual came up and robbed the store. … [A]fter the store was robbed, the witnesses said the Mercedes came in there [sic]—their own

> words—flying from the back—one said zoomed at a high rate of speed … . [Safranski] said that he did not believe that the robber would have been able to get in this vehicle with the direction that he was running in. And he also made the comment to me at one point that he thought that this vehicle was some sort of decoy, getting the attention away from the actual robber [and] where he was going after he committed the robbery.

Neither Safranski nor Retler could say for certain whether the robber arrived at the store in the Mercedes.

Based on his experience, training, and the eyewitness testimony about the Mercedes's actions, Sergeant Hayes concluded the "vehicle … wanted to draw attention to itself" and "was used as a decoy to get law enforcement and witnesses to follow it … while the individual who actually did the robbery was able to basically run out and get away in another vehicle." In short, Hayes believed the two individuals in the Mercedes "were involved" as "an accessory" to the robbery.

Safranski provided Sergeant Hayes the Mercedes's license plate number, and Retler told Hayes that the Mercedes had tape on the driver's side front bumper. Hayes relayed that information to HPD dispatch, which put out a notice that the Mercedes was involved in "an armed robbery in progress." Soon thereafter, a police officer from a neighboring village saw the Mercedes. After advising HPD, he stopped the vehicle at HPD's request.

The driver of the Mercedes was Naqur Bean; the passenger was defendant Devon Howard. The occupants did not

match Sergeant Hayes's description of the suspected robber, and police found no evidence in the Mercedes suggesting involvement in the robbery. However, because Hayes believed the Mercedes acted as a decoy, he ordered Bean and Howard to be arrested and driven to HPD headquarters.

At headquarters, police separately interrogated both suspects. Bean initially declined to speak. Howard at first denied any participation in the robbery, but later admitted his involvement over the course of a five-hour interrogation.[1] Howard told police that Bean drove him to the store because he did not have a valid driver's license. He also identified King as the robber. After Howard confessed, he spoke with Bean for ten-to-fifteen seconds. At that point, Bean was willing to speak with police, and she implicated herself and Howard by stating they acted as lookouts. After Howard and Bean's statements, the police arrested King. He confirmed Howard and Bean assisted with the Verizon robbery, and also said they were involved with prior robberies. The next day, police executed a search warrant of Howard's home and found evidence linking him to other cell phone store robberies. Additionally, Howard spoke with police from jail and admitted that he had sold stolen cell phones on the internet.

On April 22, 2014, Howard and King were indicted for unlawfully taking and attempting to take wireless phones in interstate commerce by means of actual and threatened force, violence, and fear of injury, in violation of 18 U.S.C. §§ 1951

---

[1] Howard also gave HPD consent to search the Mercedes and his cell phone (which HPD found left in the Mercedes); he signed consent forms authorizing both searches. On Howard's phone, police found text messages that were indicative of buying and selling cell phones.

and 1952. They were also charged with using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii), (2). On April 23, Howard entered a plea of not guilty. On May 12, Howard moved to suppress the evidence linking him to the robberies, including "police obtained statements, cellular telephone data, and other physical evidence," arguing that it was obtained as a result of an unlawful warrantless arrest without probable cause.

After an evidentiary hearing, Magistrate Judge Patricia J. Gorence recommended the district court deny Howard's motion. Judge Gorence determined police lacked probable cause, but held they would have inevitably discovered the challenged evidence. Both parties objected. After the district court held a second evidentiary hearing, Judge Charles N. Clevert determined police *did* have probable cause to arrest Howard because "the officers had sufficient reasonable trustworthy information to cause a prudent person to believe that Howard and Bean were aiding and abetting the armed robbery." Alternatively, Judge Clevert held that even if the arrest was improper, the evidence would have been inevitably discovered. This appeal followed.[2]

## II. Discussion

"We review a district court's denial of a suppression motion under a dual standard of review: legal conclusions are reviewed de novo, while factual findings are reviewed for clear error." *United States v. Kelly*, 772 F.3d 1072, 1077 (7th Cir.

---

[2] On March 31, 2017, Howard pled guilty. On June 28, he was sentenced to 114 months in prison and five years of supervised release. Pursuant to his plea agreement, Howard reserved his right to appeal the denial of his motion to suppress.

2014). Still, a court reviewing probable cause determinations should "give due weight to inferences drawn … by resident judges and local law enforcement officers." *Ornelas v. United States*, 517 U.S. 690, 699 (1996). This is because "[a] trial judge views the facts of a particular case in light of the distinctive features and events of the community; likewise, a police officer views the facts through the lens of his police experience and expertise." *Id.* Thus, we "should give due weight to a trial court's finding that [an] officer was credible and the inference [of probable cause] was reasonable." *Id.* at 700.

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. "[A]n officer may make a warrantless arrest consistent with the Fourth Amendment if there is 'probable cause to believe that a crime has been committed.'" *United States v. Daniels*, 803 F.3d 335, 354 (7th Cir. 2015) (quoting *Washington v. Haupert*, 481 F.3d 543, 547 (7th Cir. 2007)). "Police officers possess probable cause to arrest when 'the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect has committed an offense.'" *Williams v. Rodriguez*, 509 F.3d 392, 398 (7th Cir. 2007) (quoting *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006)); *see also United States v. Schaafsma*, 318 F.3d 718, 722 (7th Cir. 2003) ("The determination of whether probable cause exists in a given situation involves examining the totality of the circumstances in a common sense manner."). Probable cause does not require an actual showing of criminal activity, or even that "the existence of criminal activity is more likely true than not"; instead, probable cause merely requires that a "'probability or substantial chance of criminal activity exists.'" *Harney v. City of Chicago*, 702 F.3d 916, 922 (7th Cir. 2012) (quoting

*Mucha v. Vill. of Oak Brook*, 650 F.3d 1053, 1056–57 (7th Cir. 2011)).

In evaluating whether an officer has probable cause, we do not consider "the facts as an omniscient observer would perceive them," but instead, "as they would have appeared to a reasonable person in the position of the arresting officer." *Williams*, 509 F.3d at 398–99 (quoting *Mustafa*, 442 F.3d at 547). In making a probable cause determination, "a police officer may draw inferences based on his own experience," *Ornelas*, 517 U.S. at 700, as well as rely upon information provided by a credible eyewitness. *Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015). Moreover, under the "collective knowledge doctrine, … [t]he police who actually make the arrest need not personally know all the facts that constitute probable cause if they reasonably are acting at the direction of another officer or police agency." *United States v. Parra*, 402 F.3d 752, 764 (7th Cir. 2005) (second alteration in original) (quoting *Tangwall v. Stuckey*, 135 F.3d 510, 517 (7th Cir. 1998)). "[T]he arrest is proper so long as the knowledge of the officer directing the arrest, or the collective knowledge of the agency he works for, is sufficient to constitute probable cause." *Id.* (quoting *Tangwall*, 135 F.3d at 517).

Here, the police possessed probable cause to arrest Howard. As the district court held, based on the totality of circumstances and the witnesses' statements to Sergeant Hayes, a reasonably prudent officer would believe the occupants of the Mercedes "were acting in conjunction with the armed robber as a decoy or in some other aiding and abetting manner."

To be sure, "mere proximity to suspected criminal activity does not, without more, generate probable cause." *United States v. Richards*, 719 F.3d 746, 757 (7th Cir. 2013). "[I]n order

to find probable cause based on association with persons engaging in criminal activity, some additional circumstances from which it is reasonable to infer participation in a criminal enterprise must be shown." *United States v. Burrell*, 963 F.2d 976, 986 (7th Cir. 1992) (quoting *United States v. Hillison*, 733 F.2d 692, 697 (9th Cir. 1984)). Thus, we have previously found no probable cause where a defendant was arrested "principally because he carried a bag down a gangway previously used in a suspicious transaction and furtively looked around." *United States v. Ingrao*, 897 F.2d 860, 866 (7th Cir. 1990). In *Ingrao*, we concluded the defendant could have been "an innocent acquaintance …, or a resident or visitor of another house, or a salesman, or someone merely walking down the street." *Id.* at 864.

Here, in contrast, the Mercedes's conduct cannot be confused with innocent behavior. While it is true that police did not *know* the occupants of the Mercedes were involved in the robbery, the circumstances were such that an officer could reasonably infer their participation. Specifically, the Mercedes committed three separate suspicious acts. First, it sat in the parking lot in front of the store for an unnatural period of time prior to the robbery.[3] Second, it drove to the back of the store just before the robber entered the store's rear door. And third, after the robbery, as the robber ran past the Mercedes, it "zoomed [away] at a high rate of speed."

Standing alone, any one of those facts may not give rise to probable cause. But together, they provide ample support for

---

[3] Indeed, the untrained eyewitnesses found the Mercedes's conduct in the parking lot so suspicious that Safranski remembered the Mercedes's license plate and Retler observed tape on the car's bumper.

the officers' belief that the Mercedes was likely involved in the robbery as a look-out or decoy.[4] *See, e.g.*, *Burrell*, 963 F.2d at 987 (finding probable cause where the defendant arrived to a drug sale spot immediately after the known participant and watched the known participant's van and surrounding area throughout the drug transaction); *Richards*, 719 F.3d at 755, 757–58 (holding that the fact "police had no evidence linking [the defendant] to … the target of their sting … [did] not lessen … probable cause" because the police saw the defendant's vehicle throughout the drug transaction, and the vehicle acted in a suspicious manner).

Indeed, we have previously found probable cause in a similar scenario. In *United States v. Schaafsma*, a drug dealer met an undercover officer at a restaurant; the dealer told the officer he was purchasing the drugs for an individual waiting in the parking lot and gestured "in the general direction" of a Toyota where a man was sitting alone. 318 F.3d at 721. As the undercover officer arrested the dealer, he informed other officers that the Toyota was involved. At the moment of the arrest, the Toyota attempted to speed away "in a hurry," but the officers placed the driver under arrest. *Id.* We "ha[d] no trouble concluding that probable cause existed," noting that the car "tried to leave the lot … at a speed that a seasoned surveillance officer knew was faster than usual." *Id.* at 722. We held

---

[4] Howard's argument that there was no probable cause because he did not match the robber's description and police found no indicia of the robbery in the Mercedes is unavailing. Based upon the Mercedes's conduct at the Verizon store, police had sufficient information amounting to probable cause that Howard acted as a look-out. Indeed, that no evidence was found in the Mercedes is consistent with the theory that Howard acted as a decoy.

that "[w]hile mere presence at the scene of a crime is not enough to establish probable cause, … it is generally accepted that 'flight can be strong evidence of guilt.'" *Id.* (quoting *United States v. Lima*, 819 F.2d 687, 689 (7th Cir. 1987)); *see also Coleman v. United States*, 420 F.2d 616, 621 (D.C. Cir. 1969) ("[T]he element of flight in a vehicle from the scene of the crime may tip the scales in favor of probable cause.").

It is true that in *Schaafsma*, the known drug dealer gestured in the general area of the Toyota. Here, the connection between the crime and the Mercedes is not as strong. Still, the arresting officers knew about the Mercedes's suspicious behavior: the Mercedes was camped in front of the Verizon store prior to the robbery, moved to the back of the store just before the robber entered through the rear door, and like in *Schaafsma*, sped off at a high rate of speed immediately after the robbery.

In sum, contrary to Howard's contention, this is not "a classic 'hunch' case." Based on the totality of the Mercedes's conduct, Sergeant Hayes reasonably concluded there was a substantial chance the Mercedes and its occupants assisted in carrying out a crime. Thus, police possessed probable cause to make a warrantless arrest, and the district court properly denied Howard's motion to suppress.[5]

### III. Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

---

[5] Because we conclude police had probable cause to make the warrantless arrest, we need not address whether the challenged evidence would have been inevitably discovered notwithstanding the arrest.